Dalla-Longa v. Magnetar Capital 20-2978 R.L. Stiles, Director, Council on the Rights of Persons with Disabilities Okay, so tell us how you complied with Rule 5. Because Rule 5 says, I'm reading from the, it says, you send it to a registered user, and you have to be a registered user to practice, through the court's electronic filing system or by sending by other electronic means that the person consented to in writing, in either of which events services complete upon filing or sending. Okay, so you didn't send it through ECF. No, I filed it through ECF. The problem, the anomaly that occurs, Your Honor, is not us not complying with the rule. The rule says that when you file through ECF, you have served the other party. When did you file it on ECF? Timely, within the three months. It was the same day. I did two things. I did three things. I filed the motion to vacate, petition to vacate through ECF, which according to the plain words of Rule 5 is service. I then filed a notice of motion, even though the clerk said we don't need a notice of motion. Did you make that argument below, that by filing with ECF you complied? I just don't recall seeing that anywhere in the district judge's decision. The judge may not have addressed it, but it was certainly true. Did you make the argument that you complied by filing with ECF? I'm saying there are two ways that we complied. I'm asking you a question. Did you make the argument in the district court that you complied with Rule 5 by filing through ECF? My recollection is that I did. Were they registered users with respect to that case, though? That's the problem I want to address. So that's the question, is it's sending it to a registered user by filing it. If you file a case and there's nobody on the other side, you have not sent it to them, right? You sent it to the court, but you haven't sent it to them. I think the question before the court, which is quite novel and addressed by Your Honor, is that the following types of filings under the Federal Arbitration Act occur before a case has been opened and somebody else is involved. Before the arbitration even starts, there's a motion to compel. Well, you filed a motion to compel through the ECF system, which is mandatory, but nobody's yet appeared. You could be seeking an injunction before arbitration, in which case— You're talking about whether when you challenge the arbitration, where it says that you must file it with the court and that you must give notice within a certain amount of time, this ECF filing, which is not sufficient to give notice to the other party, suffices. Two things. The fact that there are other things where that might be okay doesn't take us away from the issue in that case. This occurs in six different places under the FAA where there's not a case opened formally, but you have to make a filing. Motions to confirm, motions to vacate, motions to correct, motions to modify, motions for a stay, motion for an injunction before the arbitration, motion to compel. In all of those cases, you're filing a motion, which under Rule 12, under FAA 12 or FAA 9, has to be done the way motions are filed. You then say, well, how are motions filed? And the motions are filed through the ECF system. So what we did in this case is two things. Filed through the ECF system, which Rule 5 on its face says is valid service and the commentary to it makes it clear. And the second thing is sent notice by e-mail to both counsel at the time. But that doesn't help because they didn't consent in writing to that. Well, that gets us back to Rule 38, which I'm running low on time. I may have to do this rebuttal. Why don't you just finish this one answer and then we'll ‑‑ you'll have three minutes on rebuttal, but you can finish this one answer, yeah. Under Rule 38, there was a consent in the arbitration that there could be notices by e-mail. And the entire ‑‑ we're not arguing ‑‑ Where all parties and the arbitrator agree. Right. And there was a rule adopted by the arbitrators to which the parties agreed that there would be e-mail service of motions. And so we're not arguing as the cases cited by Magnitar, such as Martin, which is a summary order of this Court, and two other cases. We're not arguing pattern and practice. We're arguing consent in the arbitration. I thought the consent was in the scheduling order entered by the arbitration panel. And it related to all motions. And then when you look at Rule 38. I read it, though. It confirmed that the parties have agreed to directly exchange and submit to the panel any usual or expected correspondence, including such filings as motions, briefs, et cetera. And it says, and the AA should be copied. That reads on its face to be documents within the arbitration. It's not, because when you look at Rule 38, that was ‑‑ that could only be adopted by the arbitrators and issued as an order by the arbitrators under Rule 38, which relates to serving of notice. And serving of notice talks about electronic service with consent, and there was consent in this case. Okay. I think we have your argument. Why don't we have you back up? You'll have three minutes to follow up. Why don't we hear from opposing counsel? We have Mr. Lamparello. Yes. Why don't you proceed? Thank you, and may it please the Court. My name is Patrick Lamparello with Proskauer Rose, representing Magnetar Capital. Your Honors, this case is straightforward. The district court correctly dismissed Dallalonga's petition to vacate the arbitration award because he failed to effect timely and proper service under the Federal Arbitration Act. The Federal Arbitration Act has clear rules that deal with the service of a notice of a petition to vacate, specifically FAA section 12. Counsel? Yes. As I understand the argument that opposing counsel is trying to make, I'm not saying that he made it quite this way. What he's saying is this rule is today absurd. Now, that's a difficult argument to make with somebody who is as old as I am, but nonetheless I'll accept the notion that the rule that you can't serve by email is absurd, and therefore we should try to read any number of other things around this rule in ways which are stretching them, because there's no question that they're stretching them to lead to us to say compliance. I mean, there's no doubt that the ECF findings were not enough in themselves, that what it said under the arbitration about agreeing to email didn't apply to this, but the basic argument is essentially, come on now, everybody knows we do this by email, so why shouldn't we read these other things broadly to permit? Yes, and respectfully, Judge Calabresi, the rules are clear as to what they require, and Dallalonga did not comply with those rules. Further than that, there are decisions, including that summary order. A summary order is a summary order. Yes, understood. But I'm sure Judge Chin was on that panel. I'm sure he recalls that. And many times I have said things, and fortunately I've learned something after, and don't do what I did before. So, yeah, it's a summary order. Yes. And, Judge Calabresi, there are opinions in the Second Circuit, including Floriston v. Pickholtz, where the Second Circuit has held that these rules under the FAA are strictly construed. These rules, these limitations rules are strictly applied. There are no exceptions, equitable or otherwise. I also referred the Court to Hakala v. J.P. Morgan Securities, which holds the same, which we also cited to in our brief. So despite the – so in addition to the fact that there are cases that deal with this exact situation, there are cases that deal with the fact that these limitation rules under the FAA are strictly applied. But basically you're saying this is a rule and we shouldn't stretch it because we cause more confusion by stretching? Correct. This is a rule that has always been – that has been complied with and that the Court should continue to comply with. And I assume one argument you would have is if this was so hard, they could have notified you a week before. You would have similarly said, sorry, we don't accept service by e-mail. And then they could have, you know, hired somebody to walk it over. A week before, a day before, anything. Your Honor, we were not even retained to represent Magnetar in this case, which we didn't even know existed at the time. So you couldn't have been in the ECF system, not only because there was no action yet, you didn't even know that you would be representing them in this action. That's correct. We were not registered users in the ECF system for a case that we did not know existed. As Judge Chinn – just to respond to Judge Chinn's comment from earlier, that ECF argument was only raised on the first time on appeal, and that is why this does not appear in Judge Schofield's order from the district court. Even more than that, it's only raised for the first time in Dallalonga's reply brief. Reply brief. Yes. But I do note that the Eleventh Circuit did address this ECF argument in the O'Neill case, and the O'Neill case did reject that ECF argument that Mr. Dallalonga – Can I ask you to just briefly address the argument that opposing counsel raises, which is, look, in the arbitration case, there is a written document, right, written communication that says, by the arbitrator, I'm confirming the party's agreement to exchange, among other things, motions, briefs, et cetera. So why would it not be the most sensible reading of that to constitute consent? It's in writing because it's written to say that, yeah, and this is a motion, right? So there are a number of reasons. First, that letter that you're referring to refers to motions and other exchange of witnesses during the arbitration. It does not extend to post-arbitration actions in court. It does not in space. The advisory – Well, on its face, it speaks in a context which is during arbitration. Correct. There's nothing in the language that in itself says this must be only during arbitration. I'm sorry. Can you repeat that? There's nothing in the language that says this is only during arbitration. The context is what you're relying on for saying that that is what it says. Well, Your Honor, respectfully, it's also the advisory committee notes to Federal Rule of Civil Procedure V that say the consent has to be in writing and express. That's not express that it refers to any post-award motions to vacate. Besides that, Judge Rodine, as you pointed out, that letter refers not to the situation of consent between the parties to email service. That's referring to the specific situation of direct exchange with the arbitrators. Now – Because everything here says you have to copy the arbitrator. Well, the direct exchange method, which is what that letter refers to, right? Typically, in arbitration, you would send it to the arbitration body first. You'd send a motion or a document to the AAA, and AAA would distribute it to the arbitrators. Here, the parties agreed to employ the direct exchange method, which is directly exchanging with the arbitrators. And it says you have to – the AAA should be copied. Correct. The language in the letter is directly exchange and submit to the panel. To the panel. To the arbitration panel. Correct. It doesn't say to the court. Correct. It says to the panel, and it doesn't say to opposing parties either. That's referring specifically to the limited situation of directly exchanging and directly communicating with the arbitration – with the arbitrators, I'm sorry. In many situations, arbitrators do not – you know, don't want the parties to directly exchange documents with them. They would just prefer everything go through AAA or whatever other arbitration body. I guess I would like to refer to – since I know Mr. DeLonga's counsel referred to Employment Rule 38 in his opening statements, I do just want to say, just for sake of completeness, that the argument that the AAA employment rules somehow create or allow for e-mail service, that's incorrect, and that's also contradicted by the plain language of those rules and by case law as well. I would refer the court to the O'Neill case, the 11th Circuit O'Neill case, which was just decided, which was – which we've studied at length in our brief, which dealt with virtually identical AAA construction rules and expressly ruled that those rules do not allow for e-mail service. Well, there's no doubt that the O'Neill case is your way directly in point. And that suggests we should go the other way, shouldn't we? Create a conflict and get it solved by the Supreme Court? I'm sorry. I missed that last part you said. Never mind. Okay. Okay. So if there's nothing else, if you have any other questions, Your Honors, I'm happy to address them. Otherwise, we ask that the panel depart. No, thank you very much. We appreciate it. Mr. Kaufman, you've reserved three minutes for rebuttal. Thank you, Your Honor. I'd like to take up sort of where I left off, which is this Rule 38, which Mr. Lamparello also mentioned, I think, incorrectly. The order for direct exchange means between the parties, and then you copy also the arbitrators. The only reason the arbitrators don't get copies of a post-arbitration filing to which there's been consent is because you're forbidden under other AAA rules for sending things to the arbitrators after the case has been decided. Under Rule 38, the direct exchange order, which was consented to by the parties, could only be adopted under Rule 38. And the last sentence, first sentence of Rule 38, talks about papers, notices, or process necessary or proper for the initiation or continuation of an arbitration or for any court action in connection therewith. Therewith, which is continuation and so on. And what is going on here is a vacatur. It isn't a continuation. So literally, you're not covered. We might be arguing that we should stretch it because it might make sense for other reasons. But literally, it is not covered, and the other rule requires expression. Your Honor, I'd like to address that because it really is a case to first impression in this Court and one that I think would be important to resolve in however this is resolved. And the reason is, we've cited I believe it was 15 different cases throughout the country where motions to confirm, which are post-hearing, that were filed pursuant to the same rule, talking about or any court action in connection therewith, are validly filed under the arbitration rules. And motions to confirm are literally the mirror opposite. And we cited many cases making that clear of a motion to petition to vacate. Often, you file a petition to vacate, they file a motion to confirm, or they file a motion to confirm and you encounter with a petition to vacate. None of those are mentioned in the EAAA rules, none. But they are clearly continuations of an arbitration. And, in fact, in this case, if we were to prevail, what would happen? There would be a remand to reopen the arbitration. It is almost identical to two procedures very familiar to this Court. One is you file a case in district court, you take an appeal to the Second Circuit. That is a continuation of the underlying litigation. Nobody would say that the appeal had nothing to do with the underlying case. And another similarity is in the bankruptcy rules, where you don't like a bankruptcy decision, you file an appeal to the district court. That is a continuation of the bankruptcy. And I think it is critical to understand that there is a need for clarification from this Court and guidance about what these rules mean, because we know how many arbitrations occur under them. And the question of whether the five different post-arbitration procedures identified in the Arbitration Act are a continuation of the arbitration, I think, is a case of first impression that should be resolved. The O'Neill case in the Eleventh Circuit did not resolve it. And if you actually adopt that none of these post-arbitration proceedings are a continuation of the arbitration, then you also say no motions to confirm can be filed, because they're all being filed post-arbitration under those rules. Okay. Thank you very much. Thank you. We appreciate the arguments of both parties. We will reserve decision.